The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention. For the court is now sitting. God save the United States and this honorable court. Be seated. Nice to have all of you all here this morning. I look forward to these three cases. In the first case, Aikens v. Ingram, Mr. Webb. Good morning. It's nice to see you on my nearly annual trip up here on this case. As you will remember, Judge King, this case has had a long and checkered career with lots of starts and stops. Some of the stops being up here in the Fourth Circuit. I would just like to dwell for a moment on Judge Boyle's order. And I have enormous respect for Judge Boyle. But I think that he gave somewhat short shrift to our contention that a Rule 12b6 motion should toll the statute of limitations. I think he felt that since this case was filed in 2006, and when it came to him, it had been viable for six years, that it had been around long enough. And that therefore it exceeded the statute of limitations. I don't think he did the necessary calculus to exclude the amount of time that we contended should be excluded from the calculations on the statute of limitations. I think he gave very short shrift to that. And in our brief... If he got that calculus right, did you lose? No, if he got the cal... well, I don't know. It depends what calculus he employed. That you've missed it by any timing. The days that you want to count aren't told. If he got that right, do you necessarily lose this case? No, I think we win. If we got the calculus right, we win. No, no, no. If he got it right. Well, I don't think he engaged in any... If you got it wrong. If you got your calculus wrong, if time's not excluded, do you lose? Yes. But I don't think that he really focused on that, and I don't think that he really gave it the attention that we asked him to give. Do you understand my question? Do you think the only way you can win this case is if... Well, I say you want to total those days for certain reasons. Do you think any totaling is required for you to get the necessary days to be within the statute? Yes, I do. I do. I think quite a bit of totaling is necessary. That's why I referenced the starts and stops. And what justification do you have for that totaling? Based on the case law that we've cited and what we think that the state courts of North Carolina would employ... Do you think the defendants did anything improper in this case? No, I do not. But I don't think that's necessary for equitable tolling. You wouldn't rest any of your claims of equitable tolling at their feet? No, I would not. But as your honors might recollect, we do contend that there were some positions that were required of us, or some actions that were required of us that we did not agree with initially in this case. And that complicated matters all the way through. But I cannot lay at the doorstep of the defendants any misconduct at all. And the matters that you didn't agree with were the district court's opinion that you had to exhaust administrative remedies. Is that right? That's correct. And so when your case was dismissed administratively, you still did not refile the complaint? No, we did not. Because we felt at the time that we had been before the Army Board for the correction of military records should have been told. And after that ruling, then of course... Didn't you have some time left at that point, even if you wasn't told? Yes, we had quite a bit of time left within the statute of limitations. When we went before the Army Board for correction of military records, we had, by our calculations, 184 days left. And then... You didn't ask to go to the Army Board, though. The judge said you had to go, and you said he was wrong. Yes, we argued... It turned out you were right, and he was wrong. That's right. And he had told you that if you had any problems, you could come back to federal court. Yes, that's correct. And that's what we did. But the defendants had no role in that. But the defendant's position here, as your honors, of course, know, is that... You've been up here how many times? Three now? Yes, sir. Three times. I think I'm up here every year on this case. The case was filed in 06. It's the first time Judge Thacker's seen you, but Judge Seddon and I might be getting tired of you all. Well, becoming good friends with you, aren't we? Yes, I know. But here we are again. The defendants, of course, argue that equitable tolling requires misconduct on their part. We respectfully disagree with that position. And determine what North Carolina law is on this, we just have to give it our best shot, don't we? I think so. They don't have a certification procedure. You know, in all these other states of the Fourth Circuit, the state Supreme Court will let us certify issues. But down in your state, they don't have a certification rule or certification statute. So we just have to do the best we can. Yes, sir. I didn't know that, but yes. That is the situation. North Carolina is unique in that context, in this circuit. Right. Well, I mean, of course, the defendants would be right if we were employing equitable estoppel, but that's not what we're asking for. We're here on bended knee. We're asking for equity. But we also think that our calculus is correct, too, on what days should be excluded. Judge Boyle, as I said, I just think he felt like the case had been around long enough. What are your equities? What are your equities in this case that you would offer up to us from bended knee? Well, the case was clearly timely filed. It was filed with 212 days left within the statute of limitations. It's always sort of been held against us that we waited until there were only 212 days left within the statute of limitations. And I don't know why that's been held against us. So you say the first thing is you timely file? We timely file without a doubt. Any other equity in your favor? Well, the equity is that we argued vehemently that we should not have to go to the Army Board for correction of military records. It wasn't required. They had no jurisdiction. And for whatever reason, the trial court at that, it wasn't Judge Boyle. It was Judge Dever. He said, no, you have to go. And so we went. And he said, if you don't have jurisdiction, you can come back. So we went when we said we didn't have to go and shouldn't have to go and it would be futile and fruitless. We were proven right. And so we came back and said to Judge Dever, I don't know that it's an equity, but isn't it a fact that this court said that to come back didn't mean you could come back and reopen that case, but that you should have acted differently, filed again or something like that, correct? Right. Yes, that's what the file I don't know that it's an equity, but isn't it a fact that even this court sort of split on exactly what the court meant when the court told you that? Yeah, I think that's right. The in bank court wasn't unanimous at all, was it? No, seven to five. That's what I'm saying. And didn't a good part of that sort of hinge on what you did in light of the court's instruction to you? Yes, sir. And so you had you had about half this court thinking that maybe you interpreted that correctly. Isn't that correct? Isn't that right? Yes, sir. I don't think counts as an equity, but that sort of is a fact in this case, isn't it? I'll accept that as a fact. I thought you would. But it is a fact. And there was, I think, seven to five vote on that. It absolutely was. And it is a fact that part of that discussion at the in bank, I'm sure you remember, is exactly what the judge meant and what you were to do in light of what the judge instructed you. Isn't that correct? That's correct. And you say since you another equity, I guess you would would say is your case isn't like some statute limitations cases where a person think that they misread or do something and they just don't file within the period. Correct. Don't file at all. You say your case is a little bit different because you did file and because you did file clearly the other side, they have notice of what you're trying to do within the statute period, don't they? Yes. And we acted actively and acted diligently to pursue our claims at all stages. We never we never were dilatory. We did everything the court asked us to do, even though we disagreed with it. And that that did not inure to our benefit clearly. And that's why we're back here. So unless you have any other questions, I'll. Let's see what Mr. McHale says about it. We appreciate it. Thank you. I see you again. Good morning, sir. May it please the court. My name is Jess McHale. I'm assistant attorney general with the state of North Carolina. Seated with me at council's table is Special Deputy Attorney General Hal Askins. Together, we represent the defendants in this matter. It's Lieutenant General William Ingram and retired Colonel Peter Von Jess. Now, the three issues that were raised in the briefs and I've I believe only heard two of them discussed today. The first issue was whether the face of the complaint revealed a basis for dismissal, whether the face of the complaint showed that the statute of limitations had run and whether there was any basis for tolling. I haven't had heard any argument in regards to that that issue. The main issue I'm hearing is the patchwork, whether we can string together bits and pieces and time periods to form a timely action. And in this regard, I think the black letter law is quite clear. Once that case was dismissed without prejudice, the action was untimely. By that point, more than three years had lapsed. Now, with 1983 actions, we not only look to state statutes and limitations, but also look to state tolling laws. And in North Carolina, the Wong v. Zico case, which was cited in the second supplemental authority submitted to this court, is directly on point. In that case, there was a federal action originally timely filed. It was dismissed without prejudice. State action was then brought outside the three years. And the plaintiff in that case tried to string together the time prior to the original filing in federal court plus the time between the two cases. And the court said no. Once the action had abated, the case was now untimely. And there's ample case law in other jurisdictions. Do you think the law in North Carolina is absolutely clear that equitable tolling there requires some misconduct by the defendant? I do believe that, Your Honor. Do you think the law is completely clear, open and closed? I do, Your Honor, and I believe that the district court did get that correctly. Did basically interpret the law correctly. And that issue is reviewable to no vote. However, the actual application of equitable tolling would be reviewable for an abuse of discretion. And I think that is dispositive in this case. In terms of the interpretation of state law, I think there's several factors that this court should consider. First is the Wade v. Danek case from this court.  The Wade v. Danek. That was a case trying to interpret Virginia law on equitable tolling. And the law was not clear in the Commonwealth. And this court said that it's a value judgment. Equitable tolling, statute of limitations are policy considerations that must be determined by a court. And in trying to determine how the highest state court would interpret the law, we should not create or expand the state's public policy. And so this court in Wade was reluctant to go out on a limb. But let me ask this. You folded into the next question I was going to ask. If we don't agree with you that the law is absolutely crystal clear, there's no certification process as Judge King has talked about, which of course I know you know correct. Correct. So then we just use our best offices to figure out what North Carolina would do, what guidance they've given us under the law. Is that correct? I believe that this court is left with the choice of determining how the North Carolina Supreme Court would rule. What else would we do? Well, there's no certainly no option to to certify it back. Do we just look at what we're trying to figure out what the Supreme Court of North Carolina would do? That's correct. Can we be informed on that by what you have by the by the Court of Appeals in North Carolina decisions? We look solely to the Supreme Court decisions. I believe that the US Supreme Court has in this court have spoken to that. I'm talking about the North Carolina court. Look, we're trying to figure out if I understand you. Both sides agree that we got to use our best offices to try to figure out what the law is in North Carolina. But in figuring that out, we look only to decisions of the Supreme Court of North Carolina. Or can we go beyond that? This court can go beyond just the decisions of the Supreme Court to determine how the Supreme Court might rule. And in doing so, there can be statutory law cases from the Intermediate Court of Appeals. Sure, we got to look at statute of limitations and all that. We could look at, I'm particularly interested, cases from the Intermediate Court of Appeals. You got that down there? Absolutely, Your Honor. In that Intermediate Court of Appeals, you can find cases just about everywhere. They don't have an in-bank procedure like we have here. They have three judge panels that don't necessarily follow each other even, do they? Well, in the civil penalty, the North Carolina Supreme Court said that one panel of the North Carolina Court of Appeals is bound by prior panel decisions. And in this case, what we have is, in fact, a panel decision that is on all fours. It's the town of Pineville case. What? Town of Pineville. And it was authored by... That's the North Carolina Court of Appeals decision. North Carolina Court of Appeals, authored by Judge Wynn of this court, who looked solely to the misconduct and any misrepresentation. But that's not controlling on the North Carolina Supreme Court and wouldn't be controlling for us trying to figure out, even if it is on all fours, giving you that point. And I'm not saying it is. But we're trying to figure out what the Supreme Court of North Carolina would do. But in... Is that not right? However, the U.S. Supreme Court has said that we can look to intermediate courts of appeals to determine how the state Supreme Court would rule. But we need to find out. We're trying to figure out what the high court of North Carolina would do in our best judgment, informed by whatever sources we want, we can use, I guess. Correct, Your Honor. And one of those sources that would inform that decision would be the Pineville case. I would also submit that the Beck case could inform this court's decision. Beck, similarly, was a tolling case. In that case, looking back at the plaintiff's briefs, in fact, plaintiff argued three different bases for tolling the action. Waiver, equitable estoppel, and equitable tolling. Distinguishing between the three. But the North Carolina Court of Appeals only looked at estoppel. Implicitly rejecting the other two. Plaintiff sought further review from the state Supreme Court. State Supreme Court denied that. So there's ample case law that's very consistently applied from the state intermediate court of appeals. That equitable tolling requires some type of misconduct, misrepresentation, deceit, fraud. Tell us why you think the appellant loses here, factually. Factually. Because it was the appellant's fault for what happened to the appellant. Well, assuming that North Carolina law would accept a broader version that does not hinge on misconduct by the defendant. Which would put North Carolina in keeping with South Carolina. I didn't ask you all that. I just asked you to answer the question for me on what you think. Of course, that's what law you think applies, don't you? It is the law that. And then answer my question. If this court was to adopt a broader version, we would have to look to the factors that have been suggested by the plaintiff that would support some sort of basis for tolling. The problem here is that those identical factors were submitted to this court previously. Rule 60B-6. You mean like an in-bank case? So you think we've decided this in the in-bank case? Portion of it, I believe there could be a law of the case analysis. Because Rule 60B-6 requires extraordinary circumstances. That is the first component required for equitable tolling under any law. The Rouse case specifically said equitable tolling requires extraordinary circumstances that are external to the plaintiff. Now, this court has since Rouse, in past brewing, has said that... Did the appellants do anything to their own detriment after they found out from the agency that exhaustion of remedies was not required? Did they not timely file after that point or not? Well, after receiving that decision from the Army Board, the appellants, again, as throughout this litigation, were presented with a crossroads and could have gone one way or the other. Why don't you just factually answer my question? I'm trying to make the argument. I'm just trying to get the factual assertion of what they did wrong. Factually, what they could have done was timely file a Rule 60B motion. But they waited about two months after receiving that decision from the Army Board. They, in fact, could have appealed that Army decision under the APA, could have brought it in front of a district court. There are multiple options after getting that decision from the Army Board that said the Army has no jurisdiction. But they waited two months and instead brought this Rule 60B motion, ostensibly knowing full well that the action was, at that point, untimely. So that is one of the factors that actually cuts against the argument of diligence. Certainly, one of the other factors is waiting nearly a month to even seek that review from the Army Board. After the dismissal, about a full month passed before a two-page document was submitted to the Army Board. So you start to string these time periods together, and it's a long time since the dismissal. So they took a month to file a paper? Well, after the dismissal without prejudice, there was approximately a full month that passed before. Let me ask you this much. Would you be making the same argument if they'd have waited two weeks? Well, I believe exhaustion throughout this proceeding has always been at the forefront. I'm just asking you, would the same argument be there for you if they waited two weeks? I think it's a sliding scale. It would depend in terms of, I guess, in a broader version of equity. So if they'd have done it two weeks rather than a month, you would not be asserting that factor? I believe that would certainly not cut in our favor quite as much. But it would cut better if they'd filed it in one week. I think one week or even sooner, but it's all these factors that we have to look at, because certainly equity has to encompass the totality of the circumstances. So we've got one month there. We've got another two months after the decision. Now, again, on the appellate side, Plaintiff was diligent, but by the time there was a dismissal without prejudice, the statute had already run. This case was at that point untimely. So the only way to salvage this case was through equitable tolling. And again, going back to the Rouse case, Rouse requires extraordinary circumstances external to the plaintiff. And in this case, there were no extraordinary circumstances, as this court previously remarked. Might it be an extraordinary circumstance that they misinterpreted? First of all, they filed timely. Didn't they file originally timely? They did, Your Honor, with proximity. And there's no argument here that the defendants haven't received notice, right? They know from the appropriately filed lawsuit, they're on notice of that lawsuit. That's correct, Your Honor. Let's look at extraordinary circumstances. I'm just wondering, might it be that part of this case hinges on how the other side interpreted the order below? I guess it was from Judge Dever. And they interpreted it to mean, go do what you have to do, but you can come back in front of me. Now, they really weren't successful on that, but wasn't this court split on exactly what those words meant in that Dever order? The court was split, but it was a 7 to 5 split. And that was one of the factors that was suggested as an extraordinary circumstance. What does 7 to 5 tell you? That's pretty close to being 6 to 6, isn't it? It is close, but I would submit that it is, at this point, a law of the case. I didn't say it's not the law of the case. To talk about extraordinary circumstances, that doesn't have anything to do with the law of the case, does it? I believe the law of the case should at least inform whether something is truly extraordinary. That's what I'm saying. Don't you think 7 to 5 might inform it was a closer call than 12-0? You don't think so? I still believe that whether it's truly extraordinary is informed by the totality. But that's not what I asked you. I said the 7 to 5 vote, could that be seen to inform you that it might be more extraordinary circumstances as how they interpreted the court's order than if it was 12-0? I'm just asking. In my opinion, I would submit that this panel is bound by the en banc decision, regardless of the split, whether it was 7 to 5, 8 to 4. This issue wasn't decided by the en banc court. Well, the term of extraordinary circumstances. It wasn't decided by the en banc court. The question of whether the plaintiff misinterpreted. I believe that that issue was addressed. Was it decided in the North Carolina statute of limitations issue? Or the equitable tolling issue? No, the equitable tolling issue, statute of limitations issue, those were not conclusively decided. What was decided was whether the circumstances suggested by plaintiffs, the same circumstances now. It was a pretty close case, 7 to 5. It has to be a close case in this court to get en banc. I mean, that's an extraordinary circumstance. Everybody, I think, would agree that you end up with an en banc court, en banc rehearing in any case in this court. It doesn't happen very often. But beyond that, sometimes the votes are a little more lopsided than 7 to 5. At least they have been historically. They have been. Let's talk about what extraordinary circumstances are. I'm just wondering if, in fact, we can look to extraordinary circumstances in terms of do equities lie here to allow the appellants to proceed. What do we make of the fact that, unlike some cases, they did file timely. And because of that, there's no question about notice. Oftentimes, you probably know in these cases, in a statute of limitations case, that the party didn't file. They say, well, was the purpose of the rule served? Did the other side have notice? Does it relate back? You know all those determinations that we do. But to me, it strikes me here, there's not really a question of there isn't any question. It was timely filed, and there was notice. So those two things are met in equity. Those things are met. And all the extraordinary, if the state of North Carolina allows us to look at things beyond misconduct, and misconduct by the defendant is not required. I know you say that it is. But for the purposes of my question, I'm laying out the framework for you. Then we look at extraordinary circumstances. Does it not strike you cases filed, the other side has notice, and what really tripped up the plaintiffs in this case is their misreading of what the court instructed them and what the court's response to following their instructions would put them. They just didn't have that reading, but at least there's evidence that a number of other federal judges thought their reading was correct. Does that not seem to sound like a fairly extraordinary case? I would submit one factor that could inform whether it's extraordinary circumstances. But there's other factors that would cut against it. Again, issues of prejudice, issues of diligence, they're not dispositive, either under the broader version. Where's the prejudice? Well, the prejudice in this case is that the action accrued nearly a decade ago. Yeah, I know, but y'all been fighting them having a chance to get to the issue. Well, as any, I think, litigator... Hey, I'm not knocking you for that, but it's hard for me to say that you fought to stop them from getting to the merits as much as you can, and now you claim they didn't get to the merits fast enough. Does that strike you as an analysis we should take? Well, that would, I guess, go to whether those were external circumstances. And again, not only do we need... You all took the position they had to go to the Army, right? Well, they could have gone to the Army first before filing. You all took that position with Judge Dever. That's correct, Your Honor. Okay, and he agreed with you. That's correct, Your Honor. And the Army said that's wrong. That's one of the parts of this thing that you have been successful in dragging this thing out. There's no question about that. And then it was here, and then it's up here again on Nen Bank, and then now it's back here again. And you haven't gotten any merits. Nobody's gotten any merits, and you may never. I would admit that both sides have made litigation choices along the way. But litigation choices are not... I don't say that criticizing lawyers. I mean, I admire lawyers who are tough and fighters  and I think we've got a nice group of them here. Thank you, Your Honor. In terms of whether... I guess along the way, each side made their own choices. And those choices entail consequences. Now, one of the courts, one of the decisions submitted in our second supplemental authority said that a dismissal without prejudice does not mean without consequence. And I think that's particularly telling here is that once that dismissal came down, there were certain options available to the plaintiff. The plaintiff could have appealed that decision. The plaintiff was convinced that the district court was wrong. The plaintiff chose not to appeal, chose instead to go to the Army Board. And once the Army Board came back with its decision, chose not to appeal that to a district court. Brought that decision back to the district court on the assumption, and it was an assumption, that Rule 60B relief would be granted. And the court says you can go back to federal court, the district court. Because you can go back to federal court and the majority of the... and bank court didn't say that was controlling anything, but there were some members in bank court that thought that was a reasonable view of it. And it might be a reasonable view, but I believe that there are certain words like could and should that are not part of the judicial lexicon when reviewing for an abuse of discretion, as stated by the concurrence previously. The standard is an abuse of discretion. Well, the district court said may go back to district court. It didn't say could go back. It said may go back to district court, right? In the original district court's order, what it said was that the plaintiff could return to federal court. It never said that it would necessarily be in that action. So that was, again, it was an assumption, and it didn't pay off. There are certain consequences with every decision that is made at a crossroads. But I think probably what's most controlling is that this court is reviewing extraordinary circumstances external to the plaintiff. They have doctrine of equitable tolling under the same standard of review that was before this court previously, abuse of discretion. We got to give our best judgment as to what the Supreme Court of North Carolina would come up with. And to that issue would be a de novo review. To the interpretation of North Carolina law would be de novo. But in terms of the district court's declining to equitably toll these circumstances, that would be for an abuse of discretion, which is the identical standard for Rule 60B-6. And in particular, I think it's worth noting that the district court specifically found that it said it cannot ignore either the actions or inactions of plaintiff in determining whether to equitably toll. And then it cited to this court's opinion that referenced tactical decisions made along the way. That's a discretionary decision, and it was certainly not an abuse of discretion. Now, in terms of the, going back to the North Carolina law, one other case that this court should consider looking at is the Papps-Brewing case because Papps-Brewing specifically stated that equitable tolling and equitable stop will have the same origin, that both require misconduct. And for these reasons, Your Honor, this case has been going on a long time, but I would submit that the district court properly exercises discretion in declining to continue this game. And I would ask that you would pardon me. Thank you, sir. Thank you. Mr. Webb. Yes, Your Honor. I'll be very brief. In terms of relying on decisions from the North Carolina Court of Appeals, I would just say that it's certainly not binding. Just a month or a month and a half ago, the Supreme Court of North Carolina reversed the Court of Appeals, which had ruled that the ban on video poker machines was unconstitutional. The Supreme Court, in its consideration, a month or a month and a half ago, said the Court of Appeals got it wrong and the ban was absolutely constitutional. So reliance on the North Carolina Court of Appeals should be taken with a grain of salt. As Your Honor, Judge King pointed out in the in-bank dissent... Because they never get it right? North Carolina Court of Appeals never gets it right? No, they get it right a lot. Okay. But in that case, they got it wrong. Oh, sure. But in the in-bank dissent of Your Honor, authored by Your Honor, Judge King, you said that the issue of the statute of limitations, and I'm quoting, is not easily resolved. And then Your Honor focused on the actual issue of equity,  to reward the deserving more so than to punish the culpable. Which I take to mean that does not require misconduct on the part of the defendants. There are external factors, of which there are plenty in this case, that can inure to the benefit of a plaintiff asking this court to invoke equity. Thank you very much. Thank you, Mr. Webb. We'll come down in Greek Council and then go to the next case.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker